# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50261 | **DATE** | 12/19/2011 |
| **CASE TITLE** | Central Laborers' Pension Fund Board of Trustees et al. v. Mike Fasula Concrete Construction, Inc. | | |

**DOCKET ENTRY TEXT:**

Plaintiffs' motion for summary judgment [37] is granted in part. The parties are ordered to schedule a prove-up hearing to determine the amount of damages owed to plaintiffs by defendant.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiffs, Central Laborers' Pension Fund Board of Trustees, Central Laborers' Welfare Fund Board of Trustees, and Central Laborers' Annuity Fund Board of Trustees, filed an amended complaint against defendant, Mike Fasula Concrete Construction, Inc., alleging a single cause of action for delinquent employee fringe benefit contributions under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). In its amended answer, defendant raised objections for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim upon with relief can be granted pursuant to Rule 12(b)(6). Defendant also raised three affirmative defenses: (1) res judicata; (2) laches; and (3) failure to mitigate damages by terminating defendant's participation in the Central Laborers' Pension Fund, Central Laborers' Welfare Fund, and Central Laborers' Annuity Fund (together, the "Funds"). For the following reasons, plaintiff's motion for summary judgment is granted in part.

### I. BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements.[1] To the extent the facts are in dispute, the court will note such dispute and will consider the facts in the light most favorable to defendant as the non-moving party.

Defendant is an Illinois corporation with its principal place of business in Illinois. Plaintiffs claim that defendant is a concrete contractor that is an "employer" and "party-in-interest" for purposes of ERISA, and that the Funds are employee benefit plans within the meaning of ERISA.[2] Defendant contends that the Funds are not employee benefit plans for purposes of ERISA, but concedes in its amended answer that it is an "employer" and a "party-in-interest" under ERISA to the extent the court finds that the Funds are employee benefit plans pursuant to ERISA. Plaintiffs claim that the Laborers' International Union of North America, the Great Plains Laborers' District Counsel and Laborers' Local Union 32 (together, the "Unions") are labor organizations within the meaning of § 101 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 152(5), and represent employees in an industry affecting commerce as defined by § 301(a) of the LMRA. The Funds receive fringe

| STATEMENT |
|---|

benefit contributions (and union member dues for forwarding to the Unions) from numerous employers pursuant to collective bargaining agreements ("CBAs") between employers and the Unions. The Funds also receive contributions and dues pursuant to participation agreements with employers and pursuant to their trust agreements.

Defendant signed several CBAs, participation agreements, and trust agreements on or about May 13, 1996 that together bind defendant to make fringe benefit contributions and dues payments to the Funds on behalf of its employees performing work covered by the CBAs. Since signing these agreements, defendant has employed members of the Unions, paying them current union wage rates, remitting current union dues on their behalf, and allowing access to its job sites to business representatives of Laborers' Local 32. Also, since signing the collective bargaining and participation agreements, defendant has, with some exceptions, filed employer reports with the Funds, paid fringe benefit contributions to the Funds, and submitted to periodic audits by the Funds. While defendant admits to delinquency in making payments, at the same time, it claims that several CBAs were signed subsequent to 1996, to which defendant is not a party. Defendant does not explain what this contention means with respect to its payment obligation under the 1996 CBA.

In or around July 2009, the Funds conducted a payroll compliance audit of defendant for the period January 1, 2007 through June 30, 2009, which identified hours worked by defendant's employees that were not reported to the Funds. The audit indicated that defendant failed to pay all contributions and work dues in accordance with the terms of the collective bargaining and trust agreements. While the audit shows a liability on the part of defendant of $221,250.94, based on a follow-up review, the liability was reduced to $215,655.79. In total, based on the audit, employer reports, and statutory liquidated damages amounts, plaintiffs claim that defendant owes the Funds not less than $296,809.32.

## II. DISCUSSION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 489-90 (2007). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Hemsworth, 476 F.3d at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. Id.

Plaintiffs contend that there is no genuine issue of material fact because defendant admits that it owes delinquent contributions to the Funds. In its response, defendant argues that there is a genuine issue of material fact as to (1) whether this court has subject matter jurisdiction over plaintiffs' claim; (2) plaintiffs' failure to state a cognizable claim; (3) whether the doctrines of res judicata or (4) laches apply to bar plaintiffs' claim; and (5) whether plaintiffs should have mitigated its damages.

### A. Subject Matter Jurisdiction

Defendant argues that this court does not have subject matter jurisdiction over plaintiffs' claim pursuant either to ERISA or § 301 of the LMRA.

In support of its argument that the Funds are not multi-employer employee benefits plans for purposes of ERISA, defendant only argues that the relevant participation agreements did not so state. ERISA does not require that a multi-employer employee benefits plan state on its face that it is such, nor that it is governed by ERISA, nor has any authority been presented to the court that a participation agreement with respect to an ERISA plan is required to do so. ERISA defines an employee benefit plan as "an employee welfare benefit plan or an employee pension benefit plan" or a plan that is both. 29 U.S.C. § 1002(3). ERISA defines an employee welfare benefit plan as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by

| STATEMENT |
|---|

an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 302(c) of the Labor Management Relations Act, 1947 [29 USCS § 186(c)] (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). The statute goes on to define an employee pension benefit plan, with certain exceptions, as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--

   (i) provided retirement income to employees, or

   (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.

29 U.S.C. § 1002(2). The evidence before the court indicates that the Funds were multi-employer employee benefit plans for ERISA purposes. Plaintiffs have submitted portions of the declarations of trust by which the Funds are established and administered. The declaration of trust creating the Central Laborers' Pension Fund and the Central Laborers' Annuity Plan states in Article VII that the trustees of the plan have the authority to determine the nature, amount and duration of benefits provided by the plan, provided that they shall exercise that authority "within the limits and in accordance with the requirements of Title I, Subtitle B, Part 2, or any other applicable provisions of ERISA . . . ." This language is also found in Article VI of the declaration of trust creating the Central Laborers' Welfare Fund. Any distributions made from the Funds, then, will be made in accordance with ERISA such that the plan will qualify as employer benefit plan under ERISA. This court therefore has subject matter jurisdiction over the case at hand.

Further, the court has jurisdiction to hear this case pursuant to § 301 of the LMRA. The Seventh Circuit has found that district courts have federal subject matter jurisdiction where a plaintiff alleges a violation of a CBA. Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm. v. Troha, 328 F.3d 325, 329 (7th Cir. 2003). The Seventh Circuit went on to recognize that because only parties to a contract can violate it, a plaintiff cannot assert subject matter jurisdiction under § 301 against a non-party to the CBA. Id.

Here, defendant argues that although it participated in CBAs in 1996, it has not been a party to, nor has it participated in, any CBA since then. In this respect, defendant notes that the 2006 and subsequent CBAs lack defendant's signature. Defendant further argues that it has not been a member of the Northern Illinois Building Contractors Association, Inc. ("NIBCA"), the employer association involved in the 1995 CBA, and so NIBCA should not be found to have authority to bind defendant in any other CBAs. Plaintiffs contend that the 1996 CBAs contain an "evergreen clause" that provides for automatic renewal. The 1996 CBAs do indeed contain "evergreen clauses" providing for their automatic renewal, and there is no evidence to indicate that either party gave the sixty or more days written notice required to terminate the 1996 CBAs. Defendant has made no mention of these evergreen clauses, much less disputed their validity or effect. As such, even viewing the facts in the light most favorable to defendant, the evidence before the court indicates that defendant was and continues to be bound by the terms of the 1996 CBAs. Therefore, because plaintiffs assert that defendant has breached the 1996 CBAs,

| STATEMENT |
|---|

this court has subject matter jurisdiction over the case pursuant to § 301 of the LMRA.

### B. Failure to State a Claim

In its amended answer, defendant argues, pursuant to Rule 12(b)(6), that plaintiffs have failed to state a claim upon which relief may be granted. Specifically, defendant contends that (1) the Funds are not ERISA plans; (2) the Funds were not created by a CBA between the parties, as required by ERISA; and (3) defendant is not an "employer" for purposes of ERISA.

For the reasons set forth above, the court has already determined that the Funds are employee benefit plans for purposes of ERISA. With respect to its second contention, defendant acknowledges that it signed the 1996 CBAs, and the court has found that defendant continues to be bound by those agreements. The respective declarations of trust for each of the Funds provide that the basis of an employer's contributions to the plan is by reason of its being party to a written agreement with the plan or the union. The 1996 CBAs are written agreements that provide for contributions by defendant to the Funds. The evidence before the court, then, indicates that the Funds came about by CBAs between the parties. Defendant does not offer any evidence to contradict this finding. Finally, while defendant claims that it is not an "employer" under ERISA, it admits in its amended answer that it is an employer and a party-in-interest under ERISA to the extent that the Funds are employee benefit plans for ERISA purposes. As the court has found that the Funds are ERISA employee benefit plans, it finds, by defendant's own admission, that defendant is an employer for purposes of ERISA.

### C. Res Judicata

Defendant claims that plaintiffs' cause of action is barred under the doctrine of res judicata because plaintiffs were granted a prior valid judgment on their cause of action under Docket No. 1:07-cv-06144. Because the prior case was adjudicated in federal court, federal res judicata law governs. In re Energy Coop., Inc., 814 F.2d 1226, 1230 (7th Cir. 1987). Res judicata "minimizes the expense and vexation of attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Alvear-Velez v. Mukasey, 540 F.3d 672, 677 (7th Cir. 2008) (quotation marks omitted). The Seventh Circuit has held that "the applicability of res judicata hinges on three elements: (1) an identity of the parties or their privies; (2) identity of the cause of action; and (3) a final judgment on the merits." Id. (quotation marks omitted). Here, the parties are the same in this and the prior case, and there was a final judgment on the merits in the prior case, as a default judgment was entered in plaintiffs' favor. The only element that may be at issue, then, is the second: whether there is a sufficient identity of the causes of action. The identity of the cause of action "is determined by using the 'operative facts' or 'same transaction' test." Id. This test states that "a cause of action consists of a core of operative facts which give rise to a remedy." Id. (quotation marks omitted).

Here, although both cases seek to reconcile defendant's obligations under the relevant CBAs and participation agreements, the time periods covered by the two claims are distinct and do not overlap. The court finds that the cases therefore arise under different sets of operative facts. See In re Energy Coop., Inc., 814 F.2d at 1231. Indeed, to find otherwise would allow defendant to continue to breach its obligation to make payments to the Funds ad infinitum, leaving plaintiffs with no means of recovery. The court therefore finds that this case is not barred by the doctrine of res judicata.

### D. Laches

The Seventh Circuit has held that "[t]he defense of laches bars an action when the plaintiff's delay in filing the claim (1) is unreasonable and inexcusable, and (2) materially prejudices the defendant." Smith v. Caterpillar, Inc., 338 F.3d 730, 733 (7th Cir. 2003). "Essentially the equitable substitute for a statue of limitations, laches serves to protect defendants from prejudice caused by stale evidence, prolonged uncertainty about legal rights and status, and unlimited exposure to liability damages." Id. A district court "enjoys

| STATEMENT |
|---|

considerable discretion in deciding whether to apply the equitable doctrine of laches." Id.

Here, defendant claims that plaintiffs should have included the 2007 delinquent payments in the prior case. The Seventh Circuit has held, for example, that a district court did not abuse its discretion in granting summary judgment on a laches defense where a plaintiff waited eight and one-half years to bring a Title VII claim and several individuals who would have served as key witnesses in the case were either deceased, out of the court's jurisdiction, retired or out of contact with the defendant company. Id. at 735. Here, defendant has not offered evidence sufficient to support a finding that filing a complaint on November 21, 2008, and an amended complaint on November 18, 2010, for damages sustained between January 1, 2007, and June 30, 2009, constituted an unreasonable and inexcusable delay, nor that it materially prejudiced defendant. Defendant has not offered evidence to show that any delay on the part of plaintiffs' resulted in the evidence in this case becoming stale, that defendant suffered from prolonged uncertainty about its legal rights and status,[3] or that defendant had an unlimited exposure to liability damages. The court therefore finds that defendant's assertion of the defense of laches fails.

### E. Measure of Damages

Defendant admits in its amended answer that "it did not pay some of the benefits contributions [to the Funds] over the 2007 to 2009 time periods" and that "it failed to make contributions after the audit was completed." However, defendant contests the damages claimed by plaintiffs, arguing that the amount of damages should be reduced because (1) the audit fails to indicate whether defendant had to report and pay the amounts it declares unreported; (2) defendant is not liable for audit costs; (3) defendant is not liable for liquidated damages; (4) plaintiffs have shown no basis for compounding prejudgment interest; (5) attorneys' fees are not warranted; and (6) plaintiffs had a duty to mitigate damages and, in that spirit, could have terminated the agreements and defendant's participation in the Funds. These arguments go not to the issue of defendant's liability for failing to make contributions to the Funds as required by the CBAs and participation agreements, but to the extent of that liability. A dispute over the amount of damages will not prevent the court from entering summary judgment against defendant, but will only affect the court's determination of damages and indicates that a hearing to prove damages is appropriate.

### III. CONCLUSION

Defendant has admitted that it owes delinquent contributions to the Funds, which the court has found are employee benefit plans for purposes of ERISA. As there is no genuine issue of material fact as to this matter, plaintiffs' motion for summary judgment is granted as to liability. As there is some dispute over the amount of damages, however, the parties are ordered to schedule a prove-up hearing before the Magistrate Judge to determine the amount of damages owed to plaintiffs by defendant.

---

1. In their reply, plaintiffs argue that the court should not consider defendant's memorandum of law in support of its response to plaintiffs' motion for summary judgment because it does not strictly comply with the requirements of a Local Rule 56.1 statement. The Seventh Circuit has indicated that district courts are entitled to strict adherence to LR 56.1 and may penalize violations by disregarding a party's noncompliant factual statements or by simply adopting the opposition's statements. Ammons v. Aramark Unif. Servs., 368 F.3d 809, 817 (2004). This grant of discretion, however, is not tantamount to a mandate that the district courts must enforce strict compliance with the Local Rule. Here, the court finds that defendant's memorandum of law substantially complies with Local Rule 56.1: the memorandum is organized into paragraphs that make specific reference to plaintiffs' Local Rule 56.1 statement and the exhibits thereto in presenting defendant's version of the facts. While the paragraphs are not numbered, as required by Local Rule 56.1(b)(3)(A), the court finds that the interests of justice require that this technical violation of the Local Rule is not

enough to warrant the court's disregard of defendant's version of the facts altogether.

2. While the court accepts plaintiffs' statement of material facts as true, it does not accept as true legal conclusions reached by plaintiffs in their Local Rule 56.1 statement.

3. Rather, defendant admits that it had, and breached, an obligation to make payments to the Funds.